Good morning, Your Honors. I'm Linda Williams, and I'm representing the relator below, Michael Darig, in a False Claims Act case. The record before this Court is almost entirely the record that was before the trial court. So there's ample evidence in the record on the summary judgment, which was decided against the plaintiff. The three elements of the False Claims Act obviously would be that a claim was filed, that the claim was false within the meaning of the act, and that there was the requisite knowledge or scienter on the part of the person that sought payment from the government to satisfy the False Claims Act. The trial court seemed to assume without ever deciding that there were, in fact, claims filed in the case, although I read the red brief as perhaps disputing that there was sufficient evidence that a claim for payment had ever been made. So I will address that briefly. The trial court also seemed to acknowledge that the claims included false information. The trial court considered it technically or, you know, some sort of de minimis level of lack of compliance with the contracted four terms. And then the trial court specifically, I believe in reading the opinion, conflated the falsity element with the knowledge, the requisite scienter as to the falsity. The trial court then also ---- Kagan. What level of scienter do you need to show in order for this to be a false claim within the meaning of the statute? Well, Your Honor, I would suggest that both the statute and the case law that we've presented includes levels of reckless indifference to the truth or falsity of the claim that's submitted or intentional disregard of the truth or falsity of the claim that's submitted. Okay. Now, so let's assume that reckless indifference is the standard that you've got to satisfy. This is a very large organization. And I would assume that you would concede that if they've got a thousand doctors working for them and two of them don't have the requisite qualification, that probably doesn't satisfy. I'm not asking you necessarily to concede that. But I'm trying to figure out what evidence we have here as to how widespread the problem is. We have very specific evidence as to a few specific doctors. What do we know beyond those specific doctors? We were not able in discovery to examine the credentialing of all of the doctors in the service consultants, independent contractors. And you were not able to because? Well, the trial court limited us to those doctors that Pointiff had experience with. And those were the three doctors. He, of course, is a person who's on permanent disability from the Park Service. So he rather regularly is assigned to these IMEs over a period of time. And in the course of his dealings, he ran into three doctors. Right. So let me go back then. So the district court simply says I'm not going to allow you to discover the credentialing of any other doctor besides these three? Well, that was the result of the district court's ruling. We were limited to the doctors that we had already uncovered facially information about. And did you object to that restriction on discovery? I don't recall, Your Honor. Okay. The one doctor involved in the case, Dr. Farris, there were no records that the defendant had about the number of IMEs that Dr. Farris had performed. Dr. Farris, you'll recall, was the individual who was not board certified. And so we don't have evidence of the number of claims. She was subsequently suspended and is now deceased. So we don't know the magnitude of Dr. Farris's performance of duties. I don't know this from what I read, and you may know this. At the time that Dr. Farris performed these examinations, I know that she did not have what I would call a normal active practice at that time. Was she quasi-retired? I mean, what stage was she in in her career? Dr. Farris was possibly not in active practice, but more specifically under the terms of that earlier agreement. This is in the 1998 to 2002 period. Under the 1998 agreement, her lack of qualification wasn't the active practice, but was the lack of board certification and the specialty to perform. No, I understand that. I'm just asking if you can tell me at what stage she was in her practice. Was she 50 years old, still active in the sense of? Oh, she was a youngish woman, Your Honor. She died in her mid-50s. I see. So at the time of that practice, she was not elderly. I see. Okay. The nature of the exam room led Mr. Darragh to question whether or not she was actively engaged in practice. And that led to his discovery, because it's quite simple to determine that the physician's not board certified. It's just part of their medical record that's there. What prompted my question was your client's observation that she didn't appear to be operating what he thought of as a normal doctor's office. Correct. And that just aroused his suspicion, but we don't rely on his suspicion as being proof of the fact she lacked an active license. Sure, sure. Okay. If the Court wants to call it a technicality, the lack of credential was her failure to have the required board certification in her specialty, because, remember, these are second opinions, really to benefit both the program and to benefit the worker, that someone who's very competent in the particular nature of the injury and is current in their medical practice. And I take it it's not disputed with respect to Dr. Ferris. I guess the other side can tell me if there's a disagreement on this. It's not disputed that the records of the company show that she was not, in fact, board certified. Oh, there's no dispute. Yeah. I wouldn't think so. Yeah. They knew, number one, she was not board certified. They knew, number two, that she was required by the contract to be board certified. Yes. We would say that to the assuming that now we want to get to the knowledge requirement about where we impute the knowledge of the company for her failure of the certification. So we've moved beyond the claim issue. I thought perhaps that the defendant appeared to be disputing that there were claims. And just so everyone was clear, there are. Given the time, could you be sure that you addressed the damage, the alternative holding of the district court? Absolutely. I just want to nail down, if I can, in the record, there are 20 pages of claims, requests for payment on the form, which can be read down here in the 1500 form. The 1500 form is the claim for. Okay. We've got that part. So if you can move on to Judge Fischer's question. The issue of damages, then, the defense seems to rely upon perhaps the Woodbury case, which is a fairly good case. Let me make my question a little more precise. There is a law to the effect that the submission of the claim itself, assuming it was a claim, that doesn't comply is what the False Claims Act is all about. What would be the measure of damages that you would, if we agreed with your theory of the case, what would be the measure of damages that the district court would be awarding if it found these three or there were more than these three who did not, and I'm not using this as technical violation, that didn't comply with the certification, the board certification or the number of hours, notwithstanding that there was no physical, they gave totally adequate exams, they came up with totally adequate second opinion. What would be your measure of damages, then? Well, we believe that the measure of damages, as the Woodbury case says and has been explained in a number of false medical payment cases, that the measure of damages is the amount that the government paid in reliance upon the false statement. We're saying that the false statement is the presentation of the bill which says you owe me money. Okay. You owe me money because we've presented a claim that, at least in our view, they were recklessly indifferent to the truthfulness of that presentation. Okay. So the damages would be, let's say it was $350. We're in Portland, $250 for a, that's from the prior case. Let's just say it was $250, $350 per examination and they submitted 50 claims for payment on examinations done by the three doctors who were not, didn't comply with contractual requirement. So the damages are that number times three. And then there's what, additional, is it double damages? There's civil penalties potentially per claim. Per claim. And then there's the potential for treble damages. Treble damages. And there are specific numbers on the claims. The so-called follow-up, which is a less intensive thing, is $125 at the time of the billing. Of course, the government's been out the money for a while now. And the more detailed second opinion is $625. Okay. So we would contend that had the government been informed that these doctors don't comply with the contract, it makes the contract useless. It was a bargained-for term. The payment terms were bargained for, or the reimbursement terms were bargained for in anticipation that the services would be provided, and that there's obvious reasons that the government could perhaps have waived the requirement if there just weren't any doctors available in all of Oregon or Washington to perform the service. But the fact of the matter is the entire claim. Would that be open to proof on remand that the government would have treated, can they bring in somebody from the government to say it didn't make any difference to us? Well, the trial court concluded that there was no evidence that the government didn't pay the claim or didn't think the claim was worthwhile. There's absolutely no evidence one way or the other of what the government would have done. No, I understand. I'm saying if you go back on remand and go to trial on it, this is summary judgment, right? Correct. Okay. So if you go to trial on it, does one side or the other have to establish? Presumably you say if there is a viable defense, let me ask it this way, for them to say the government and pull in a government claims processor and say we historically don't mind these if it's not more than a few, you know, an occasional because we expect mistakes in the process. Is that open to proof on remand? The case that directly assesses that, which I believe is the National Wholesalers, that's the Delco-Rimney battery case, or the Aerotex case, in those situations, the availability of getting a waiver from the specification was used as evidence against the defendant to show that the defendant was more intentional in, you know, just not taking the extra step instead of not complying with the contract. Frankly, I don't know, Your Honor, whether this defendant could say the government doesn't care, it waives its contract right now. It would seem to me that the presentation of the claim as one of the MACBI cases. If you don't know, I didn't want to get a... I just wanted to know if, in your understanding of existing law, it was absolutely foreclosed to consider whether the government would treat this as a material omission or not. It's a breach of contract in some sense. Often there's materiality in breaches. I just don't know the answer as to whether there is that concept. In the court, the Senate history, which is quoted in the last of the MACBI cases, that's the 339, F-3rd at 1019, says a false claim for reimbursement under Medicare, Medicaid, or similar program, and we contend to similar program because it uses a similar form or the exact same form, is actionable under the Act. And some claims may be false, even though the services are provided as claimed, if, for example, the claimant is ineligible to... Yeah, I've read MACBI. That's why I have a question. A question of factor on it. Let me ask you this, just because your time is running. If this does go back for further proceedings, is this going to be a jury trial, if you get to trial, or is this a bench trial? This is a jury trial, yes. This is a jury trial. And let me ask you further. You've got these very specific claims, false claims, with respect to these specific doctors. Are you claiming any other claims as false claims beyond those submitted by these specific doctors? Well, we would certainly ask the trial court to allow us to examine the credentials of the other, I believe it's something like 32,000 doctors that MCN contracts with, but they're not – I don't believe MCN has a current contract with the Federal District 10. So let me ask you, so that's one of the things that's puzzling me. You say we would ask the district court to allow us to examine the other 32,000. It sounds as though you want further discovery. Correct, Your Honor. We would certainly want to revisit the discovery issue. We felt that we have satisfied the prima facie showing and the factual showing that we in fact had claims, they were false, and that there was – we haven't had a chance to go through the knowledge requirement, but it's pretty clearly laid out the attitude of Dr. Grant, the attitude of training, what materials were given to the doctors, and the total lack of inquiry by anyone from Dr. Grant down to the clerks who've telephoned the doctors. No one had any instructions to ask them whether or not they were providing 240 hours of direct patient care. Okay. If I could just ask about two of the three doctors, Dr. Ferris was not board certified, and that's the shortcoming that you focus upon. She had passed the written portion, apparently, and had not taken the oral portion of the board certification. Dr. Saccomano, what I gathered from the record, qualified as someone who would be in active practice but opted for a less active status, so he would have to pay smaller dues as far as his professional dues. And, in fact, he reactivated, and thereafter, if I understand the record correctly, as to those two people. Correct, Your Honor. They're two slightly different requirements. One is an – and we're talking about the later contract, which is Saccomano and Zinmeister. The two requirements are unrestricted medical license, and then B, 240 hours of direct patient care. And we think Dr. Saccomano, to the extent he had the, I can't be compensated license, I can do volunteer work, but I can't be compensated, that was a restriction on what he could do, so he did not have an unrestricted license, and also he was not, by his own admission and from his own forms that he filled out, he was not currently providing the 240 hours of direct patient care. Okay. And for discovery, you would just propose to go through the 32,000 forms of the various doctors under this MCN and see if – and check those and review those and see if there were – Well, Your Honor, the MCN contract at the time, which, as I said, as far as I know, they do not currently have the contract. And for the doctors that would have fulfilled this contract, which was with Region 10, for Oregon and Washington and, you know, Montana, those would not be 32,000 doctors. That would be whatever number of doctors there are. And it should not be that difficult if the records are maintained on the Adante system, which we briefly described. The board-certified yes-no shouldn't be that difficult a question, because Dr. Farris, in fact, said no as to board certification. Pending, soon, but it was definitely a no, and it showed up as a no on the Adante screen, on the computer screen, which is in the record. It shows no board certification. And perhaps one of the six reviewers just assumed that it would be completed by the time that she was active in taking the cases. Oh, absolutely. There could have been a clerical error on the part of an individual. If I could just have one sentence. I think our claim is that the total lack of concern, including any training materials, any follow-up, a printed flow chart, which the credentialers, those researchers had, and Dr. Grant's own assumption that the doctors would never read his manual, all tend to suggest a corporate culture that was indifferent to whether or not these folks actually met the contracted floor requirements. Okay. Thank you very much. You've gone over, but we'll give you a minute to respond in rebuttal. Mr. Calmonson. Thank you, Your Honor. May it please the Court, Matthew Calmonson for Medical Consultant Network. I'd just like to start with this issue of discovery. This is the first that I'm hearing about any issues with discovery in this case. There was no motion filed under Rule 56-F. Request that they couldn't respond or a summary judgment motion. I've been through the trial court file. I haven't seen an order from the court limiting discovery, and I just went through the docket. I'm not saying it's not paced in some order. Let's assume that whatever, for whatever reason, they limited their examination to the three doctors that they had reason to suspect. Does that do they have some threshold they have to cross, that they get more than three doctors? And then the other evidence they put forward on testimony from your client's side of the process, are you saying that they fail as a matter of law because they didn't show more than three doctors on deliberate indifference or reckless disregard? Yes, Your Honor. We are taking that position. How many would they have had to show? If they'd taken it up to 25, would that be enough? It's possible. I mean, I don't have a specific number. Well, but how are we supposed to come up with a specific number? This is summary judgment, so the question is, why aren't three doctors enough on summary judgment to create a triable issue? It's based, if you look at it through the prism of what they're alleging. They're alleging that we were recklessly indifferent in the sense that our policies weren't good enough to, I guess, communicate the different requirements of the two different contracts. And so what does the evidence show? The evidence shows that there are two contracts, one in 1998, that has lots of requirements in it, including specific requirements for qualifications. And one of them is you have to be board certified. Another is you have to be licensed to practice. The evidence shows that there were at least, I think the contract says there can be an average of 600 IMEs performed per year under this contract. So what we have is, under the 1998 contract, one violation, one breach of contract. And this is a breach of contract. This is not a violation of a regulation or a statute. This is a breach of contract, and we have one under the 1998 contract. And so to say that you were reckless. And that's Dr. Farris? That's Farris, correct. Okay. And I should also add there's some statements in the record about Farris having an alcohol problem. There's no evidence in the record at all of that. It's just this board certification. I don't think it's in the formal qualifications that the doctor cannot be an alcoholic. That's true. But there was a requirement that the doctor be board certified. That's correct. And she did not satisfy that. That's correct. Okay. So alcoholism is off to one side as far as I'm concerned. Right. Thank you. Unless that's a condition of being board certified. Right. But what we have here is. And then we have two under the 2003. Right. We have two doctors under the second contract, which was enacted in the very end of 2003, and has more requirements. You have to be. You have to have an unrestricted license, and you also have to have this active practice requirement. And did either of those two doctors in the later contract satisfy the criteria? The two doctors did not satisfy. There's evidence in the record that at least give rise to an inference that the two doctors did not satisfy the active practice requirement. So what we've got is three doctors for whom we've actually had serious discovery as to these individual doctors. We have no further discovery as to any other doctors. The point is three for three, that basically all three doctors are out of compliance. Your Honor, that's presuming that there's some reason why they couldn't have discovery on all these other doctors. Well, I guess that comes back to Judge Fischer's question. And if we're three for three, is that enough from which we may, the plaintiff is permitted to draw an inference that then he gets past summary judgment? If they were only entitled to discovery on three doctors only, and they came up with evidence that those three doctors violated, breached this contract in a specific way, I don't believe that is an inference that every single doctor in our system was violating. Well, that's not the universe. It doesn't have to be every single doctor. The question is whether there is a significant number of incidents where there are false claims or that there are any false claims. There are at least whatever claims were made on behalf of these three doctors times the three, that's some universe of claims, right? How many claims does that total? Well, we have one. We have one in the five-year period under the 1998 contract. That's one violation. No, no. Wait a minute. Did Dr. Ferris only do one of these exams? I mean, that's all the evidence we have on the record is that one claim that we've admitted to. And we should assume she only did this one claim during the time that she was not certified properly. Well, there needs to be some evidence, some proof. How about circumstantial evidence? I'm just trying to understand what you're imposing here, asking us to impose here some threshold. What they're doing is they're taking mistake made on three doctors, and they are saying now we look at their process, and there's evidence of what they did or didn't do under their process. Even though the flow chart says these are supposed to be done, there's evidence as to what was done in fact. And that, you know, in a variety of claims that are made in different contexts, the concept of prima facie case comes to mind. And then the question is, well, what do you all have to say about that? Did you show that, you know, those three are unique and isolated exceptions? Did you come in with any evidence that all the other certifications you made over a one-year period, as an example, were all absolutely correct? No, Your Honor. The evidence that we came forward with was evidence that we had policies in place that was supposed to work. And the policies were we had a credentialing requirement that was supposed to check everyone's credentials once they were scheduled. We had recruiters and schedulers who were supposed to interact with the doctors and ensure that they were properly licensed. And we had schedulers who were supposed to ask the doctors, and this goes to the second contract, whether they had an active practice requirement. That's on paper. Now, what was the evidence as to what was done in fact? Well, the only evidence we have that that didn't occur are the three doctors that we pointed to over an eight-year period. And that's the question I see. Those are the only three doctors we have specific evidence for. Right. And that should harm – that does not show widespread miscompliance with the contract. Well, let me ask you this. There are two different ways of looking at this case. One of them is that there were three false claims submitted, or rather false claims submitted with respect to three doctors. Now, if that's the only claim that specifically these three doctors submitted false – you submitted false claims arising out of what these doctors did, I think the case for getting to the jury on that is pretty strong because the evidence for all three doctors is that they didn't satisfy the criteria. And as to Dr. Ferris, you actually had the evidence in your file that she didn't qualify. So if the only case is false claims with respect to these three doctors, that's pretty strong. Now, if the claim is broader, that you've got a systemic problem and that you've submitted a whole lot of false claims with X percent of your 32,000 doctors, that's a different claim. But if the claim is false claims as to these three doctors, how do you answer that? My answer to that, Your Honor, is that it's not just the mere submission of the false claim. It's the submission of the false claim with the proper center. And so they need to establish that this was somehow – that they have evidence that this was either knowing or that it was reckless. Well, let's focus on Dr. Ferris. As I understand it, your company had evidence in its records that she was not board certified. Why is that not enough to the jury as to whether or not you having in your own records that she's not board certified and therefore doesn't satisfy that criteria, you nonetheless submit a claim based on services provided by her? Why can't a jury conclude that that was at least knowingly in reckless disregard? I believe it cannot because all the evidence that they have as to Ferris is that we submitted a claim on behalf of Dr. Ferris and that she was not board certified at the time. And that you had in your records evidence that she was not board certified. That's correct, Your Honor. And there's also a case law that says expressly that mere negligence and a mistake is not sufficient to satisfy the center. Right. And so what is it about one mistake? And that's why we keep getting back to, well, what other evidence is there that this was something that occurred all the time when we clearly had these policies in place that were supposed to catch this. And all we have is one bill, one, under that contract showing that we did something wrong. And I think the reasonable inference is that this one doctor fell through the cracks. And if there's other evidence out there, on summary judgment, it was plaintiff's burden to submit that evidence, and they did not do that. And so all we have to work with is what we have in the record, which is that there was a policy in place, that there were people whose jobs it was to catch this. And as to the other two doctors for whom the licensing is a problem and maybe the active practice is a problem, what was in your records that shows that they were not in compliance? I think the evidence shows that for Dr. Sacamano, that he had an inactive license under the 2003 contract but did not submit any bills until his license became active. So there is no licensing problem with Dr. Sacamano. Wait a minute, let me ask you this. But was he required to have an active, unrestricted license for the exams that he conducted? Now, that he might have submitted bills after he had the license that was fully activated or unrestricted, that does not allow him to submit bills for examinations conducted when his license wasn't unrestricted, does it? It doesn't, and there's no evidence that he did. If you look at the bills in question under his name, you'll see that the first bill that he submitted under the 2003 contract was in 2004. And then if you look at his deposition testimony, he says, yeah, I reenacted my license. Yeah, but I want to make sure we're asking and answering the same question. Were all of those bills submitted after he had an unrestricted license for examinations conducted after he had the unrestricted license? As far as I know, yes. I mean, that's what we claimed in our brief, and they never came back. And at the time he investigated Ms. Williams' client, did he have an unrestricted license? He never investigated Ms. Williams' client. Oh, I see. That was the appointment that was rescheduled. Correct. Okay, I'm with you. But in the interest of full disclosure, he did not – there's another thing that he didn't have, which is the act of practice requirement, which is separate from the act of the unrestricted license requirement. And so what you have here, again, is essentially a question of inadequate controls. The contract changed. We had more stringent requirements in the 2003 contract. We had a system in place that was supposed to make sure – Yeah, I understand that part. But so when he's submitting bills after he's got an unrestricted license, he may not actually – he may still not be satisfying the number of hours. That's correct, Your Honor. And did you have in your records information that showed you that he was not satisfying the hour requirement? I can't answer that question. I mean, what I can say is that if the policies were followed, somebody should have asked him that question. There should have been a notation in his file saying whether he was or was not once they realized that they were going to schedule him for a federal workers' comp claim. So whether – where the system broke down in those two instances, there's no evidence of that. But we can see they did not follow – they did not comply with that part of it. So they didn't comply. And, in fact, it turns out he did not, during that period, have the number of hours. Correct, Your Honor. But, again, there was a system in place. And I think they would have to show – they would have to come forward with some evidence to show that it was inadequate, other than the fact that it didn't break down. And I do believe that the fact that they did not come forward with evidence of widespread incompliance with the contract does go to show that this wasn't reckless, that there weren't any warning signs that they ignored. There wasn't – this isn't a whistleblower case where someone said you're doing this wrong and we put our head in the sand. I mean, this lawsuit was filed in May of 2004, which is about six months after the 2003 contract went into effect. So, you know, what this shows is there was a few doctors in the very beginning who submitted a few bills who did not comply with this technical active practice requirement, which is not – this is not, like I said, a violation of a regulation. This isn't a violation of a statute. It's specific to the client, which happens to be the federal government in this case. Unlike cases such as Macbee and Krizak, where there were really bright-line violations, I mean, just outright fraud, the government opted not to get involved in this. That's correct, Your Honor. And this goes to – if I can clarify something. We've never argued that there weren't claims submitted to the government. What we've argued is that every breach of contract is not a false claim. And if you look at the cases that were later in this case filed, it's places like the Macbee case where there was specific false claims on the invoice. They used the PIN number of a doctor who wasn't performing the services. In our cases, the invoices stated we performed a second opinion. It happened on this date. It was by this doctor. We certified that the second opinion was medically indicated. But there was no certification of complete conformance with the contract. And so at a minimum, this is not the typical false statement case where there's something that was said that was shown to be false. In the reply, they said a whole bunch of other cases that deal with a contract for a particular type of goods. And I think counsel mentioned the National Wholesalers case, where they contracted for a certain type of generator. The defendant had given them a different type of generator and slapped the wrong label on there. That's clearly a false claim. Here, there was just a breach of contract. Breaches of contracts can be waived. There is no case law that says that every single breach of contract is automatically a false claim when you get payment under that contract. I see my time's up. Okay. Thank you very much. Ms. Williams, you have one minute for response. I'll try to be very brief, Your Honor. At page 106 of the excerpt of the record is the IME provider account application of Dr. Sakamano. And evidently, it came to us via fax, so the print's quite small. But at ER 106 on the application in 2000, another Dr. Sakamano filled it out. It looks like he was filling it out in 2004. One of the questions that was later deleted from the spoken-confirm information was the question way at the bottom, second from the bottom, do you currently provide direct patient care, excluding IOMs? And then it says, yes, no, full-time, part-time, it's claimed. And Dr. Sakamano didn't check any of the boxes, but did say volunteer overseas, which presumably had someone followed up on that record, they would have found out, as we did in deposition, that it drastically reduced the actual direct patient care in these overseas visits and had not actually provided direct patient care in that volunteer capacity for a number of years prior to 2004. And that specific inquiry that would have alerted one of the credentialers, that specific inquiry has been deleted from the currently used form. So the very thing that perhaps is overlooked that should have raised the red flag was then totally omitted from the forms that were currently in use during the litigation. And just to clarify, there's absolutely nothing in the record which indicates that there's any written material to any of the researchers, the credentialers, or to the clerks that do the telephone scheduling. There's nothing about the 240-hour active practice requirement. So there really is no specific information where you could ever assume that, you know, the clerk who does scheduling in Longview, when they call Dr. Sakamano, they're going to say, Have you done 240 hours of direct patient care lately, doctor, before I can schedule you? I'm looking at this form on 106, the Dr. Sakamano form. What date was this form filled out? I'm having trouble picking up the date that he filled this out. Well, let's see where Dr. Sakamano is. Dr. Sakamano, she was signed. This was not before Longview. No, I just can't see. It was passed on 217-204, because it shows the header is, you know, Sakamano box. Well, that's faxed. It looks like that's faxed from MCM. Okay, so Dr. Sakamano would have filled it out sometime earlier. Correct. And I don't find that the existing is Dr. Sakamano's license, which has been in the files of the hospital where they were filing the information on him before. And his license at that time does have the no comment. He's retired, but he's active, and he's not allowed to charge for his services, which apparently he understood because he doesn't do a very valuable work overseas. Well, and at the bottom of 106, the form he fills out, the question number five, if no, date you retired from direct patient care. Now, he didn't check no above, but he does put in a date that he retired from direct patient care in May of 98. Correct. And I'm trying to figure out, you know, is he filling this out in June of 98, or is he filling this out in April of 2003? I mean, I don't know. Okay. Well, it's unclear, but at a time that he was scheduled to examine Mr. Dower, there was evidence that they had that he wasn't supposed to be compensated on the fact that the doctor was not there. And what was the date that he was supposed to be examining your client? I understand he did not. It would have been sometime prior to 2003, because as counsel has pointed out, this case was filed in May of 2004, and, therefore, the attempt to schedule the doctor stopped on that one. Okay. I got it. And Darragh's inquiry to the medical board, whether or not this file was qualified, wouldn't have to have occurred before May of 2004. Okay. Thank you very much. Thank you both sides for your helpful argument. The case of Darragh v. Medical Consultants Network is now submitted for decision. The next case on the argument calendar – does either of you need a break at this point? Let's take one more after this. The next case on the argument calendar, Bollinger v. Fabian, just so that everyone sitting here knows, we'll take a ten-minute break after this case.
judges: Fletcher, Fisher, Roll